IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ILLINOIS FARMERS INSURANCE COMPANY, *as subrogee of Jason and Mindy Jones*, | |
| Plaintiff, | Case No. 10-cv-713-JPG-DGW |
| vs. | |
| SUNBEAM PRODUCTS, INC., | |
| Defendant. | |

**MEMORANDUM AND ORDER**

      This matter comes before the Court on defendant Sunbeam Products, Inc.'s ("Sunbeam") motion for summary judgment (Doc. 62). Plaintiff Illinois Farmers Insurance Company ("Farmers") filed a response (Doc. 77) to which Sunbeam replied (Doc. 80). The Court held oral argument on this motion on March 20, 2013. For the following reasons, the Court denies Sunbeam's motion for summary judgment.

    1. **Facts**

      On April 13, 2008, a fire severely damaged Jason and Mindy Jones' ("the Joneses") residence located at 75 North Hankins Road, Harrisburg, Illinois. The Joneses' insurance policy in effect on the day of the fire was through Farmers and provided for coverage of the residence, its contents and property, and alternative living expenses. Farmers ultimately paid the Joneses $240,214.68 to cover the fire damage.

      At the time of the fire, the Joneses owned a Sunbeam electric blanket that they kept by a chair in their family room. The family always kept the blanket plugged in, but it is not clear whether the blanket was turned on the day of the fire. While members of the household do not

recall turning it on that day, the Joneses had previously found the blanket turned on from accidentally bumping the switch.

Farmers engaged three main experts to assess the cause of the fire. Carl Welcher, Chief Fire Investigator of Sceptre Investigations conducted an origin and cause investigation of the Joneses' residence and completed a report of his findings. Welcher concluded that the fire originated "on the floor of the front room between a recliner chair and the West wall of the front room," the area where the Joneses kept the electric blanket. Doc. 77-5, p. 2, 4. Welcher determined the origin "by the burn patterns on the recliner chair and the damage on a wooden chest located along the West wall of the front room." *Id*. He observed that the only two heat producing items in the area of origin were a lamp and the electric blanket. Because no failures were noted in the lamp, he concluded that the "only viable heat producing item found in the area of origin was the Sunbeam [e]lectric [b]lanket." *Id*. "Based upon a reasonable degree of fire investigation certainty," Welcher concluded that "the fire was caused by a failure in the Sunbeam Electric Blanket." *Id*. However, at his deposition, Welcher contended that he did not have an opinion as to the cause of the fire, but still asserted that the fire originated in the area where the electric blanket was stored.

Farmers enlisted Robert D. Kraft, a metallurgical engineer, to determine if wires in the electric blanket were damaged by electrical arcing in addition to the thermal damage caused by the fire. Kraft concluded that the wires had damage consistent with electrical arcing based on the varying temperatures experienced by the wires. He explained

> [i]t is not possible that the wire temperature would vary so greatly due only to exposure to burning materials during the fire itself. The high temperature gradient within so small a distance along the wire would require a very high localized heat input for a very short time, at the area where the nugget formed. This is exactly the type of condition to be expected when electrical arcing occurs.

Doc. 77-9, p. 4.  At his deposition, Kraft further explained that his observations were consistent with both electrical arcing *and* exposure to an outside heat source.

Scientific Expert Analysis Project Engineer Robert P. Juergens provided an electrical engineering expert opinion for the origin and cause investigation.  Juergens' report observed that the electrical devices in the area of the fire's origin were a floor lamp, receptacle, ceiling fan, and electric blanket.  Neither the ceiling fan nor the receptacle showed signs of an electrical failure, and Juergens ruled those items out as potential sources.  The floor lamp showed signs of electrical shorting on the power cord, which can be either the cause or the result of a fire.  However, he later ruled the floor lamp out as a source because an examination of the electric blanket heating wires revealed masses that could not have formed if the floor lamp had initiated the fire.

With respect to the electric blanket, Juergens' report states as follows:

> The electrical blanket had two potential sources of an electrical failure.  Evidence of electrical arcing and shorting was found on the power cord to the control, and the evidence of intense localized heating was found at metal masses on the heater wire.  To produce either of these highly localized events, electrical current must have been flowing in the affected conductor.  If the arcing in the power cord initiated the fire, the arc severing of the blanket or tripping of the circuit breaker would have occurred and cut power to the blanket or tripping of the circuit breaker would have occurred and cut power to the heating blanket, preventing the formation of the masses on the heating wire.  Considering the close proximity of the evidence of electrical arcing on the floor lamp to electrical arcing on the electric blanket power cord, a fault on the lamp that initiated a fire would have resulted in a relatively soon fault on the power cord of the electric blanket, again cutting off power to the heating wire, preventing the formation of masses on the wire.  If a failure of the heating wire caused the fire, the resistance of the heating wire and of the control would have prevented the circuit breaker from tripping.  This would allow the fire to spread, eventually resulting in the electrical arcing of the power cords to the floor lamp and the electric blanket heater controls.

Doc. 77-7, pp. 20-21.  Ultimately, Juergens concluded that "the cause of the fire was a failure of a heating wire in the electric blanket."  Doc. 77-7, p. 21.

3

At his deposition, Juergens indicated he was not able to determine whether the controller to the electric blanket was turned on or off because the control's latch mechanism would not make that indication after a loss of power. Further, he could not determine the exact failure in the heating wire that caused the fire. Juergens explained his *theory* of how the failure came about, but explained he could not state that opinion within a reasonable degree of scientific certainty because the electric blanket was burned. He affirmed that he relied on Kraft's opinion that the blanket heating element was energized at the time of the fire, and that if the blanket was not energized at the time of the fire the heating wire could be excluded as a source of the fire. He then explained that if the heating wire were excluded the only potential ignition source would be the power cord to the electric blanket. He specifically affirmed that the lamp cord would not be the potential source.

Farmers, as subrogee of the Joneses, filed a three-count complaint in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, on June 14, 2010, alleging the electric blanket was the source of the fire. The complaint included claims for negligence, strict liability, and breach of warranty. On September 16, 2010, Sunbeam filed a notice of removal, removing this case to the Southern District of Illinois on the grounds of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Sunbeam file the instant motion for summary judgment alleging it is entitled to judgment as a matter of law because Farmers cannot prove the causation element of its claims. Specifically, Sunbeam alleges Farmers' experts cannot establish that the electric blanket was the cause of the fire because they (1) cannot establish whether the blanket was turned on or off, and if the blanket was off it could not have caused the fire; and (2) testified that the damage to the wire could have resulted from either electrical or thermal heat.

More specifically, Sunbeam takes issue with Juergens' testimony because Juergens' opinion that the source of the fire was the heating wire was based on Kraft's opinion that the electric blanket was energized. Sunbeam takes issue with Kraft's testimony because he explains that the evidence he observed was consistent with both electrical arcing and outside thermal damage. Finally, Sunbeam takes issue with Welcher's opinion because his report concludes that the electric blanket was the cause of the fire, but at his deposition he only concludes that the fire originated in the area of the electric blanket.

### 2. Analysis

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992). If the moving party is defending the claim at trial, he need not provide evidence affirmatively negating the plaintiff's claim. It is enough that he point to the absence of evidence to support an essential element of the plaintiff's claim for which he carries the burden of proof at trial. *Celotex*, 477 U.S. at 322-23, 325.

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a


genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252. Where the defendant has pointed to a lack of evidence for one of the essential elements of a plaintiff's claim, if the plaintiff fails to provide evidence sufficient to establish that element, there is no genuine issue of material fact. *Celotex*, 477 U.S. at 322-23.

When a federal court sits in diversity it must apply state substantive law. *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010). In Illinois, the common law negligence standard governs a negligence claim in a product liability action. *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263 (Ill. 2007). Accordingly, the plaintiff must establish "the existence of a duty of care owed by the defendant, a breach of that duty, an injury that was proximately caused by that breach, and damages." *Id*. In an Illinois products liability claim premised on strict liability a plaintiff must establish "that the injury resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the manufacturer's control." *Kelso v. Bayer Corp.*, 398 F.3d 640 (7th Cir. 2005) (quoting *Sollami v. Eaton*, 772 N.E.2d 215, 219 (2002)). Thus, causation is an essential element of both negligence and strict liability claims. *Malen*, 628 F.3d at 303. A plaintiff can establish the element of causation by direct or circumstantial evidence, but "must introduce evidence with

'a reasonable probative force, for the jury will not be permitted to engage in mere speculation or imagination.'" *Parker v. Freightliner Corp.*, 940 F.2d 1019, 1026 (7th Cir. 1991).

Viewing the evidence in the light most favor to Farmers, there is circumstantial evidence in the record from which a jury could find the electric blanket caused the fire in the Joneses' residence, satisfying the causation elements of both the negligence and strict liability claims. First, there is evidence from which a jury could conclude that the fire originated in the very spot where the electric blanket was located. Welcher determined in his report and affirmed in his deposition that the fire originated in the family room between a loveseat and the western wall, the location of the electric blanket.

There is also evidence from which a jury could reasonably conclude that the blanket was the only electrical source in the immediate area from which the fire could have started. Welcher eliminated any non-electrical sources of the fire in his report, and Juergens' report ruled out the receptacle, ceiling fan, and lamp. This left only the electric blanket as a potential source of the fire.

There is evidence from which the jury could reasonably conclude that the blanket was turned on at the time of the fire. While Juergens may have relied on other reports to determine that the blanket was energized, evidence indicated that on previous occasions the Joneses had accidentally turned on the electric blanket by bumping the switch. Accordingly, there is a genuine issue of material fact concerning whether the electric blanket caused the fire. As such, Sunbeam is not entitled to judgment as matter of law. Sunbeam's issues with the expert testimony are matters that should be presented to the jury.

### 3. Conclusion

For the foregoing reasons, the Court **DENIES** Sunbeam's motion for summary judgment (Doc. 62).

**IT IS SO ORDERED.**

**DATED:** March 22, 2013

<div style="text-align:right">

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

</div>